## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GAGE WESTON,

Plaintiff,                                    Case No.: 1:25-cv-533

v.                                            HON.

EQUIFAX INFORMATION SERVICES LLC,             **COMPLAINT AND DEMAND FOR JURY TRIAL**

   Defendant.                              **FCRA, 15 U.S.C. § 1681** *et seq.*

_____/

Tarek N. Chami P76407
CONSUMER JUSTICE LAW FIRM PLC
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com
P76407

*Attorneys for Plaintiff*
*Gage Weston*

     Plaintiff Gage Weston ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Defendant" or "Equifax").

## I.    INTRODUCTION

     1.    Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's "consumer reports" as defined in 15 U.S.C. § 1681a(d) and consequently reported inaccurate information about Plaintiff.  "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and

1

consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the Fair Credit Reporting Act, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.    Venue in the Western District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.    PARTIES

4.    Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.    Plaintiff is a natural person who resides in Springfield, Michigan.

6.    Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.    Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

2

8.     During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Michigan and conduct business in the State of Michigan on a routine and systematic basis.

9.     Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10.    During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.    Any violations by Defendant were not in good faith, were knowing, negligent, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

## IV.   **FACTUAL BACKGROUND**

12.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

3

14.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15.     The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.     Defendant, one the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17.     Defendant regularly purchases and obtain consumer bankruptcy information to include in consumer reports.

18.     Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

20.     Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

21.     The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22.     Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

23.     Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

26.     The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

5

27.     FICO Scores are calculated using information contained in Defendant's consumer reports.

28.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

29.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a.   "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b.   The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it is, which will undoubtedly impact a consumer's credit score.

30.     Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

31.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

32.    Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

33.    A consumer's income, however, is not included in their consumer report; only their "amount of debt" is. Consumers enter their income into credit applications. Therefore, DTI is not calculated in a consumer's credit score but is a factor in credit decisions.

34.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest rates and lower credit limits).

35.    A consumer who has obtained a bankruptcy discharge and has an account that is inaccurately reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

36.    Defendant is aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

37.    However, Defendant also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

38.    Further, Defendant knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

39.    Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged), can be easily retrieved from the same sources from which Defendant independently obtains consumer bankruptcy case information.

7

40.     Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

41.     Despite the availability of accurate consumer information, Defendant regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

42.     Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

43.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on information it knows is incomplete or inaccurate.

44.     After a bankruptcy is discharged, Defendant also routinely relies on furnisher data, even though the furnisher has ceased updating an account upon the filing of a bankruptcy and the account information is "stale" (not updated by the furnisher since more than 90 days).

45.     Consequently, Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly accesses, or sourced through Defendant's independent and voluntary efforts.

46.     Defendant routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b).

47.     Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendant's own files.

48.    Defendant also knows that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he/she did not deserve a discharge of a particular debt.[1]

49.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit reporting following a Chapter 7 discharge.

50.    Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Defendant is on continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

### *Allegations Specific to Credit Reporting of Plaintiff*

51.    Plaintiff filed for Chapter 7 bankruptcy on July 30, 2024, in the United States Bankruptcy Court for the Western District of Michigan (Case No. 24-01994).

52.    On December 12, 2024, Plaintiff's bankruptcy was converted to a "no asset" Chapter 7 Bankruptcy.

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

53.    Thereafter, Plaintiff was not personally liable for any of their dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

54.    Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

55.    The allegations in this complaint against Defendant are based on the reporting by Defendant in Plaintiff's February 19, 2025, consumer report.

56.    Upon information and belief, Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

57.    However, in the Public Records section of Plaintiff's consumer report, Defendant is not reporting a public record of Plaintiff's bankruptcy case.

58.    Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

59.    Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

60.     Defendant knows that consumers file Chapter 7 bankruptcies to eliminate debt they cannot afford and that the "default rule" is that all debts in a Chapter 7 are discharged unless excepted by the bankruptcy code (student loans, child support, etc.).

61.     Defendant should have reported **all** of Plaintiff's dischargeable pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance.

62.     Defendant failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy and/or with a zero-dollar balance.

63.     Defendant inaccurately reported Plaintiff's following accounts:

    a.   **First Premier Bank account**, ending with *9195; opened in January 2022 ("First Premier Account") and

    b.   **Orbit Leasing Company account**, ending in *2976; opened in December 2021 ("Orbit Leasing Account") (collectively the "Accounts"), which pre-dated Plaintiff's Chapter 7 conversion.

64.     The Accounts were discharged on or about December 12, 2024. Therefore, the Accounts should have been reported as discharged in bankruptcy and with a zero-dollar balance.

65.     However, Defendant inaccurately reported the Accounts with a status of "charge off," and with a zero-dollar balance.

66.     Defendant knows that the Accounts have not been updated since prior to Plaintiff's Chapter 7 filing.

67.     Equifax did not indicate that the Accounts were discharged in bankruptcy or report the Accounts status as closed with a zero-dollar balance, despite reporting other pre-bankruptcy accounts with zero-dollar balances.

68.   The Accounts were essentially frozen in time by Defendant based on a pre-bankruptcy balance and status on Defendant's February 19, 2025, consumer report. Consequently, Defendant inaccurately reported the status and payment obligations on the Accounts.

69.   Defendant does not have reasonable procedures in place to detect and correct pre-Chapter 7 debts which continue to report balances after Defendant reports a discharge.

70.   Defendant does not have reasonable procedures in place to detect and correct or suppress pre-Chapter 7 debts reporting balances, where Defendant is aware that the furnisher has ceased all account updates after the bankruptcy was filed.

71.   Notably, the other national consumer reporting agencies, Experian and Trans Union, did not inaccurately report the Accounts such as Equifax did.

72.   Upon information and belief, First Premier Bank and Orbit Leasing Company (the "Furnishers") furnished information to Defendant that indicated Plaintiff's Accounts were included or discharged in bankruptcy, and/or had a status of closed with a zero-dollar balance after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data it received.

73.   Alternatively, Defendant knew from past experiences that the Furnishers furnish inaccurate information regarding discharged debts or have historically failed to employ reasonable procedures to ensure they properly update consumer debts after a Chapter 7 Bankruptcy is discharged.

74.   Nevertheless, Defendant blindly relied on the information provided by the Furnishers even though it conflicted with information contained in Defendant's records, contradicted other information Defendant reported about Plaintiff, or neglected Defendant's knowledge regarding Plaintiff's bankruptcy and discharge.

75.     If the Furnishers did not furnish data to Defendant that the Account was discharged, Defendant's blind reliance on the Furnishers was unreasonable.

76.     Defendant was unreasonable in failing to consider the fact that since the Furnishers ceased updating the Accounts after Plaintiff's bankruptcy was filed, the Furnishers were unreliable furnishers in this instance.

77.     Defendant inaccurately reported that Plaintiff's First Premier Account and Orbit Leasing Account status was "charge off."

78.     Defendant inaccurately reported the Accounts status after the Accounts were discharged in Chapter 7 Bankruptcy and therefore were closed with a zero-dollar balance.

79.     Defendant failed to indicate that the Accounts were closed and/or was discharged in Chapter 7 Bankruptcy.

80.     Defendant's reporting of the Accounts is patently false and therefore inaccurate. If not patently false, Defendant's reporting of the Accounts is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

81.     Upon information and belief, had Defendant accurately reported the Accounts as closed with a zero balance, Plaintiff's credit scores would have been better.

82.     Defendant's reporting of the Accounts status as "charge off" gives potential creditors a negative opinion of Plaintiff's creditworthiness.

83.     The inaccurate reporting by Defendant suggests to creditors that Plaintiff is guilty of a bad act and was not deserving of receiving a discharge of the Accounts.

84.     On or about December 28, 2024, after Plaintiff's bankruptcy discharge, Plaintiff applied for a credit card with Capital One and was denied due to the inaccurate reporting of the Accounts by Defendant.

85.     Plaintiff's February 19, 2025, Equifax credit report shows a corresponding hard inquiry from Capital One.

86.     On or about February 22, 2025, after Plaintiff's bankruptcy discharge, Plaintiff applied for an Imagine credit card with WebBank and was denied due to the inaccurate reporting of the Accounts by Defendant.

87.     WebBank in its denial letter states that its decision was based on information obtained in a report from Equifax.

88.     Plaintiff intended on using the credit cards to help cover his essential monthly expenses when his income was not sufficient.

89.     Defendant's inaccurate reporting of the Accounts, along with additional information belonging to Plaintiff, was published to potential creditors by Defendant during the process of Plaintiff's credit applications.

90.     As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including lower overall creditworthiness, and other financial harm.

91.     Due to the inaccurate reporting and being unable to obtain credit, Plaintiff has been forced to borrow money from family and friends to help cover basic living expenses such as diapers for his twins.

92.     Plaintiff was looking forward to a fresh start and being able to rebuild his credit after the bankruptcy.  Being delayed from being able to obtain credit has affected Plaintiff both financially and emotionally.

14

93. As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorney's fees incurred, related to Defendant's inaccurate reporting.

94. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, headaches, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V. COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

95. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

96. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

97. Defendant negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information it reported about Plaintiff's pre-bankruptcy debts after Plaintiff received a Discharge Order.

98. Defendant had an obligation to follow reasonable procedures to ensure it reported the bankruptcy discharge and its effect(s) with maximal accuracy.

99. Upon information and belief, Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and/or information provided by data furnishers.

100. Individual furnishers of account information also notified Defendant of Plaintiff bankruptcy, as evidenced by other tradelines in Plaintiff's consumer report showing zero balances.

101. But despite knowledge of Plaintiff's bankruptcy, Defendant inaccurately reported the Accounts, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy.".

102.    Defendant knew or should have known of its obligations under the FCRA, especially those pertaining to reporting discharged debt with a zero-dollar balance.

103.    These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of discharged debts.

104.    Additionally, Defendant possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer files for Chapter 7 Bankruptcy.

105.    Despite knowledge of these legal obligations, Defendant willfully and knowingly breached its duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendant deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

106.    Not only did Defendant have prior notice of its unreasonable procedures for reporting discharged debts, but it also possessed information from which it should have known the information reported about Plaintiff was inaccurate.

107.    Defendant knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

108.    Defendant knows that discharged pre-petition debts should not be reported as charge off, late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

16

109.    Yet in this case, Defendant reported the Accounts, which pre-dated Plaintiff's bankruptcy, with an inaccurate status, after they were discharged.

110.    Defendant intentionally ignored the fact that the Furnishers ceased updating the Accounts after Plaintiff's bankruptcy, which was unreasonable.

111.    Defendant knows that the Accounts have not been updated since Plaintiff's Chapter 7, and that the reported status is therefore inaccurate, outdated, and has been superseded by Plaintiff's Chapter 7 discharge. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/consumer report.

112.    Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and reasonably available to Defendant.

113.    In around 2009, Defendant implemented its own automated software "bankruptcy scrub" following the settlement agreement in *White v. Experian Info. Sols., Inc.,* No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008).

114.    Defendant's bankruptcy scrub software identifies pre-petition accounts and makes assumptions about which accounts were discharged through Chapter 7, even when the furnisher does not update the accounts as discharged.

115.    In other words, Defendant's automated bankruptcy scrubs assume Defendant's notice of a Chapter 7 discharge is in fact notice that a consumer's pre-petition accounts may be reporting inaccurately, and Defendant will overwrite data reported by a furnisher according to Defendant's assumptions and algorithms.

116.    However, Defendant has intentionally chosen to disregard knowingly inaccurate open balances and payment obligations of certain types of pre-bankruptcy accounts in Defendant's software programming of its automated "bankruptcy scrubs" it has been employing for well over a decade.

117.    Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

118.    Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

119.    Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

120.    Plaintiff suffers actual damages, including loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately failing to report that the Accounts were discharged in bankruptcy.

121.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, the above-referenced economic damages, emotional distress, mental anguish, humiliation, stress, loss of sleep, headaches anger, frustration, shock, embarrassment, and anxiety.

122.    Defendant is a direct and proximate cause of Plaintiff's damages.

123.    Defendant is a substantial factor in Plaintiff's damages.

124.    Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a)    Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)   An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)   An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)   Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)   Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII.   <u>JURY DEMAND</u>

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 8th day of May 2025,

**CONSUMER JUSTICE LAW FIRM**

By: /s/*Tarek N. Chami*
Tarek N. Chami – MI# P76407
CONSUMER JUSTICE LAW FIRM PLC
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

*Attorneys for Plaintiff,*
*Gage Weston*